**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. ____________________

THE EXODUS ROAD, INC., a Colorado nonprofit corporation,

Plaintiff,

v.

CÍNTIA MEIRELLES, an individual,

Defendant.

---

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

---

Plaintiff The Exodus Road, Inc. ("TER"), through undersigned counsel, states as follows for its Verified Complaint against Defendant Cíntia Meirelles:

## INTRODUCTION

1. TER is a Colorado Springs nonprofit that fights human trafficking under its federally registered and incontestable trademark THE EXODUS ROAD® and its registered logo. Meirelles is TER's former Country Director for Brazil. TER terminated her employment on September 28, 2026.

2. Since then, Meirelles has taken TER's name and logo for herself. She solicits TER's donors, writes to TER's staff and volunteers, and posts on LinkedIn, Instagram, and TikTok as the head of "The Exodus Road Brasil," while telling those audiences that her organization is no longer affiliated with TER. She has applied in Brazil to register both of TER's marks, and the name of a TER prevention program, as her own.

3. Each day this continues, TER's donors are confused about who TER is and where their gifts go, and TER loses control of its name in the country where it has worked for years. The

year-end giving season, when TER receives a substantial share of its annual support, is under way. TER sought to resolve this matter without litigation. Meirelles refused. TER now seeks a temporary restraining order, preliminary and permanent injunctive relief, and damages.

**PARTIES, JURISDICTION, AND VENUE**

4. TER is a nonprofit corporation organized under the laws of Colorado with its principal place of business in Colorado Springs, Colorado. TER is a citizen of Colorado.

5. Meirelles is an individual domiciled at 6967 Pines Circle, Coconut Creek, Florida 33073. For purposes of 28 U.S.C. § 1332, she is a citizen of Florida or, in the alternative, a citizen or subject of a foreign state.

6. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and (b), 15 U.S.C. § 1121, and 18 U.S.C. § 1836(c), because TER's claims arise under the Lanham Act and the Defend Trade Secrets Act and its unfair-competition claim is joined with substantial and related trademark claims. The Court also has jurisdiction under 28 U.S.C. § 1332(a), because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. In the alternative, the Court has supplemental jurisdiction over TER's state-law claims under 28 U.S.C. § 1367(a).

7. This Court has personal jurisdiction over Meirelles. For nearly seven years she was employed by, paid by, and accountable to TER in Colorado; she accepted TER's policies issued from Colorado; and she acted under a power of attorney executed in Colorado. The conduct alleged in this Complaint arises from that relationship and is expressly aimed at TER in Colorado, where TER owns its marks and goodwill and where the harm is felt.

8. Venue is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to TER's claims occurred in this District and the marks and goodwill at issue are owned and managed here.

## GENERAL ALLEGATIONS

### A. TER and Its Marks

9. Founded in 2012, TER partners with law enforcement to combat human trafficking, equips communities to protect the vulnerable, and supports survivors, in the United States, Brazil, and other countries. TER's funding includes generous charitable gifts from donors in the United States and elsewhere.

10. Since 2012, TER has continuously used THE EXODUS ROAD name and mark and its logo in commerce to identify its services and solicit support.

11. TER owns U.S. Registration No. 4,694,455 for the standard-character mark THE EXODUS ROAD, registered March 3, 2015, and U.S. Registration No. 5,913,822 for TER's logo (the "TER Logo"), registered November 19, 2019 (together, the "Registered Marks"). Each covers rescue services in International Class 39, namely, coordinating and facilitating operations of surveillance teams and investigative organizations to identify and rescue victims of child slavery, sex slavery, and human trafficking, providing rescue operations for those victims, and organizing rescue services; and private investigation and surveillance services in International Class 45, namely, conducting investigations to identify victims of child slavery, sex slavery, and human trafficking, providing intelligence and information to law enforcement agencies relating to organized crime networks that operate across jurisdictional lines, and exposing criminal activity to identify and prosecute perpetrators of child slavery, sex slavery, and human trafficking

operations, namely, detective investigations (the "Registered Services"). Copies of the registrations are attached as **Exhibit 1**.

12. Both registrations are incontestable under 15 U.S.C. § 1065. They are conclusive evidence of the validity of the Registered Marks, TER's ownership of them, and TER's exclusive right to use them in commerce. 15 U.S.C. § 1115(b).

13. TER also owns common-law rights in THE EXODUS ROAD, the TER Logo, and the names "The Exodus Road Brasil" and "TER Brasil," which TER has used to identify its work in Brazil (with the Registered Marks, the "TER Marks"). TER uses the same naming convention for its operations in other countries—for example, The Exodus Road Columbia.

14. TER also owns U.S. Registration No. 7,412,216 for the standard-character mark INFLUENCED®, registered June 11, 2024 (see Exhibit 1). The registration covers educational services related to trafficking prevention and digital safety awareness in International Class 41. TER spent the past year adapting the INFLUENCED® program for Brazil, with federal grant funds, under the name "Lup@ Digital" (or "Lupa Digital").

**B. Meirelles's Employment and Obligations to TER**

15. TER hired Meirelles effective December 31, 2019. Her offer letter conditioned her employment on her obligations regarding TER's confidential and proprietary information. She rose to the position of Country Director, Brazil and later to Director of Strategic Partnerships, Latin America, and Senior Advisor to Brazil.

16. As a TER employee, Meirelles was bound by TER's policies, including its Confidentiality and Company Ownership of Intellectual Property policies. Under them, TER owns all creations and works, including "trademarks and trade names," made on company time or with

company assets or relating to TER's business, and employees "must assist the Company in perfecting and protecting its title." Relevant excerpts are attached as **Exhibit 2**.

17. In 2022, TER's Board authorized operations in Brazil and named Meirelles TER's representative there. TER granted her a power of attorney, executed in Colorado, as "The Exodus Road's Brazilian Liaison." At TER's direction, on TER's time, and at TER's expense, she formed a Brazilian civil association that TER named The Exodus Road Brasil. It operated under the TER Marks, with TER's permission, as TER's Brazil program. That permission ended no later than Meirelles's termination.

18. TER also operated Instagram (@theexodusbr) and TikTok (@exodusbr) accounts for its Brazil program (the "TER Brasil Accounts"). Meirelles managed them for TER as part of her job duties.

19. TER terminated Meirelles's employment on September 28, 2026, and revoked her power of attorney on October 6, 2026.

**C. Meirelles Appropriates TER's Name and Logo**

20. Since her termination, Meirelles has used the TER Marks, in the United States, in Brazil, and elsewhere, to present herself as the head of an organization called "The Exodus Road Brasil" and to divert TER's support to herself. TER has not authorized any of this use.

21. **Domain.** After her termination, Meirelles registered the domain exodusbr.com. She uses it to send solicitations under TER's name from the address cintiameirelles@exodusbr.com.

22. **Donor solicitations.** Meirelles has sent solicitations to TER's donors and funding partners, most in the United States, using the TER Marks. For example, on October 31, 2026, she emailed the 5 Day Deal Foundation (addressing it as "ASEA Advancing Life Foundation") under the subject line "Charity introduction - The Exodus Road Brasil," signing as the "Executive

Director & Legal Representative" with The Exodus Road Brasil's CNPJ number. In that email she announced that "we have officially concluded our affiliation with The Exodus Road," claimed TER's program results (including the training of more than two million rideshare drivers) as her own, suggested that gifts to TER are "absorbed by international administrative overhead," and asked the donor to support her "directly" (copy included as **Exhibit 3**). Upon information and belief, Meirelles has made other, similarly deceptive donor solicitations.

23. **Staff and volunteers.** Meirelles has sent similar messages, under the TER Marks, to TER's staff around the world and to TER's volunteers.

24. **Social media.** Meirelles has repeatedly posted on LinkedIn, Instagram, and TikTok under the TER Marks, holding herself out as the representative of The Exodus Road. Those posts include:

(a) an October 30, 2026 LinkedIn statement styled as an "Institutional Statement" of "The Exodus Road Brasil," announcing "A New Chapter" (**Exhibit 4**); and

(b) a November 9, 2026 Instagram post claiming to represent "The Exodus Road Brasil" and announcing an official agreement with a Brazilian government agency (**Exhibit 5**).

25. **Brazilian trademark applications.** Meirelles has applied to Brazil's National Institute of Industrial Property (INPI) to register, in her name or in the name of an entity she controls, THE EXODUS ROAD BRASIL, the TER Logo, and "Lup@ Digital" (the "INPI Applications"). She filed them knowing those names and the logo belong to TER. She filed them on September 24, 2026, while she was still employed by TER.

26. **Interference with TER's representative.** Meirelles has sent letters, in the name of The Exodus Road Brasil, to Bianca Garibaldi, a current TER employee, asserting that Ms. Garibaldi may not represent herself as TER in Brazil.

27. **Lup@ Digital.** Before TER could end her access, Meirelles or her agent downloaded TER's Lup@ Digital program content. Meirelles continues to hold the content and, in light of her INPI Application for Lup@ Digital, she is using the content or intends to do so.

28. Meirelles's use of the TER Marks is deliberate. In an October 28, 2026 statement to TER's Board, she acknowledged the need to "phase out" TER's name. Instead, she has expanded her use of it and sought to register it.

29. Meirelles's statements are false and misleading. TER's Brazil program results are TER's, achieved with TER's funds; TER's gifts are not lost to "overhead"; and Meirelles has no authority to speak for TER or for any program operating under its name.

30. Meirelles's conduct is likely to cause, and in fact has caused, confusion among donors, partners, staff, and the public about whether she is TER, is affiliated with TER, or is authorized by TER, and about where gifts made in response to her solicitations go.

**D. TER's Demand and Meirelles's Refusal**

31. On November 5, 2026, TER's counsel sent Meirelles a cease-and-desist letter. It offered her a clear path to avoid litigation by, among other things, stopping all use of the TER Marks, withdrawing the INPI Applications, returning the Lup@ Digital materials and the TER Brasil Accounts, and ceasing contact with TER's people, by November 19, 2026.

32. Meirelles did not comply by the deadline. She continues to use the TER Marks.

**E. TER Is Suffering Immediate, Irreparable Harm**

33. Meirelles's infringement is ongoing, and its harm grows daily. TER has lost control of its name and reputation. Donors who are confused or misled, or who come to doubt TER's stewardship, may never return. TER's partners in Brazil, including law-enforcement agencies, cannot tell who speaks for TER. TER staff in the United States and Brazil have spent valuable time trying to prevent and correct Meirelles's infringement and misrepresentations.

34. The harm is most acute now. TER receives a substantial share of its annual support in the year-end giving season, which includes Giving Tuesday on December 1, 2026. Every solicitation Meirelles sends under TER's name during that season diverts or deters gifts TER cannot recover.

35. If the INPI Applications proceed, Meirelles will claim exclusive rights in TER's own name and logo in Brazil, threatening TER's ability to operate there under its own marks.

36. Meirelles also continues to control TER's Brazil-specific Instagram and TikTok accounts, which threatens the permanent loss of the accounts, their followers, and the content TER paid to create.

37. Money damages cannot remedy these harms. TER is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). TER will promptly move for a temporary restraining order and preliminary injunction, including an order requiring Meirelles to withdraw the INPI Applications and return control of the TER Brasil Accounts.

## CLAIMS FOR RELIEF

### COUNT I
### Infringement of Registered Trademarks
### 15 U.S.C. § 1114(1)

38. TER incorporates the preceding paragraphs.

39. Without TER's consent, Meirelles has used in commerce reproductions, copies, and colorable imitations of the Registered Marks, including "The Exodus Road Brasil," the TER Logo, and the exodusbr.com domain, in connection with soliciting charitable contributions and advertising counter-trafficking services identical or closely related to the Registered Services.

40. That use is likely to cause confusion, mistake, or deception.

41. Meirelles's infringement is knowing and willful, making this an exceptional case.

42. TER is entitled to injunctive relief under 15 U.S.C. § 1116; Meirelles's profits, TER's damages, enhanced damages, costs, and attorney fees under 15 U.S.C. § 1117(a); and destruction of infringing materials under 15 U.S.C. § 1118.

**COUNT II**
**False Designation of Origin and False Association**
**15 U.S.C. § 1125(a)(1)(A)**

43. TER incorporates the preceding paragraphs.

44. Meirelles's use of the TER Marks in commerce is likely to cause confusion as to her affiliation, connection, or association with TER, and as to the origin, sponsorship, or approval of her activities. Her statements that her organization's affiliation with TER has ended, made under TER's name and logo, compound that confusion.

45. TER is entitled to the relief described in Count I.

**COUNT III**
**False Advertising**
**15 U.S.C. § 1125(a)(1)(B)**

46. TER incorporates the preceding paragraphs.

47. In commercial solicitations and public posts disseminated to donors and the public, Meirelles has misrepresented the nature, characteristics, and qualities of her own and TER's services and activities, including by claiming TER's program results as her own and suggesting that gifts to TER are absorbed by overhead.

48. Those statements are false or misleading, are material to donors' giving decisions, entered interstate commerce, and have injured or are likely to injure TER through diverted gifts and lost goodwill.

49. TER is entitled to the relief described in Count I.

**COUNT IV**
**Cybersquatting**
**15 U.S.C. § 1125(d)**

50. TER incorporates the preceding paragraphs.

51. After her termination, Meirelles registered the domain exodusbr.com, which is confusingly similar to THE EXODUS ROAD, a mark that was distinctive when she registered the domain. It is also confusingly similar to TER's own domain, theexodusroad.com.

52. Meirelles registered and uses the domain exodusbr.com with a bad-faith intent to profit from TER's mark, including by using it to solicit TER's donors in the name of an organization she claims is no longer affiliated with TER. She has no rights in the mark, and the domain is not her name.

53. TER is entitled to forfeiture or cancellation of the domain, or its transfer to TER, under 15 U.S.C. § 1125(d)(1)(C); actual damages and profits or, at TER's election, statutory damages of up to $100,000 under 15 U.S.C. § 1117(d); and its costs and attorney fees.

**COUNT V**
**Common-Law Trademark Infringement and Unfair Competition**

54. TER incorporates the preceding paragraphs.

55. Meirelles has used the TER Marks to pass off her activities as TER's or as affiliated with or approved by TER, and to misappropriate the goodwill TER has built in the TER Marks, causing a likelihood of confusion. Her conduct constitutes trademark infringement and unfair competition under Colorado common law.

56. TER is entitled to injunctive relief, damages, and Meirelles's profits.

**COUNT VI**
**Deceptive Trade Practices**
**Colorado Consumer Protection Act, C.R.S. § 6-1-101 et seq.**

57. TER incorporates the preceding paragraphs.

58. In the course of soliciting charitable contributions, Meirelles knowingly or recklessly passed off her services as TER's, made false representations as to their source, sponsorship, approval, affiliation, and association, and disparaged TER's services by false or misleading representations of fact. C.R.S. § 6-1-105(1).

59. Those practices significantly impact the public as actual or potential donors, whom Meirelles targets by email and on social media.

60. TER has suffered injury in fact to a legally protected interest as a result, and is entitled to damages or, upon a showing of bad faith, treble damages, and to its costs and attorney fees. C.R.S. § 6-1-113.

**COUNT VII**
**Intentional Interference with Prospective Business Relations**

61. TER incorporates the preceding paragraphs.

62. TER has ongoing relationships with its donors, funding partners, and volunteers, with a reasonable likelihood of continued support. Meirelles knows of those relationships through her employment.

63. Meirelles has intentionally and improperly induced or attempted to induce those donors and partners to stop supporting TER and to direct their support to her instead, through infringement of the TER Marks and false statements.

64. TER has lost or is likely to lose support it would otherwise have received, and is entitled to damages.

**COUNT VIII**
**Breach of Contract**

65. TER incorporates the preceding paragraphs.

66. As a condition of her employment, Meirelles agreed to TER's terms of employment, including her obligations regarding TER's confidential and proprietary information and TER's ownership of trademarks, trade names, and works made on company time or with company assets.

67. TER performed by employing and compensating her. Meirelles breached her agreement by appropriating the TER Marks and the Lup@ Digital name and content, and by filing the INPI Applications instead of assisting TER in protecting its title.

68. TER has been damaged and is entitled to damages and specific performance, including assignment of the INPI Applications to TER.

**COUNT IX**
**Breach of Fiduciary Duty**

69. TER incorporates the preceding paragraphs.

70. As TER's employee and its attorney-in-fact in Brazil, Meirelles owed TER fiduciary duties of loyalty and good faith, including the duties to account for and deliver to TER property acquired for TER and not to use TER's confidential information against it. Those duties survived her termination.

71. Meirelles breached those duties by appropriating, and refusing to return, the names, accounts, program materials, and Brazilian operation she acquired and managed for TER, and by using them to compete with TER for its donors.

72. TER is entitled to damages, disgorgement, and a constructive trust over the property and benefits Meirelles obtained through her breaches.

**COUNT X**
**Misappropriation of Trade Secrets**
**Defend Trade Secrets Act, 18 U.S.C. § 1836; Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-101 et seq.**

73. TER incorporates the preceding paragraphs.

74. TER's confidential information, including the unreleased Lup@ Digital program materials and other nonpublic TER information Meirelles has used, derives independent economic value from not being generally known, and TER takes reasonable measures to keep it secret. It relates to services used in interstate and foreign commerce.

75. Meirelles acquired that information under a duty to maintain its secrecy and has used and disclosed it without TER's consent.

76. TER is entitled to injunctive relief, damages for its actual loss and Meirelles's unjust enrichment, and, for willful and malicious misappropriation, exemplary damages and attorney fees under C.R.S. §§ 7-74-104 and 7-74-105.

**PRAYER FOR RELIEF**

TER requests that the Court enter judgment for TER and against Meirelles and grant the following relief:

A. A temporary restraining order, preliminary injunction, and permanent injunction enjoining Meirelles, and all persons in active concert or participation with her who receive actual notice of the order, from the conduct described in subparagraphs (i) through (iv), and requiring Meirelles to take the actions described in subparagraphs (v) and (vi):

(i) using THE EXODUS ROAD, "The Exodus Road Brasil," "TER Brasil," the TER Logo, "Lup@ Digital," or any confusingly similar name, mark, logo, domain, or social-media handle;

(ii) holding herself out as representing TER or as affiliated with TER;

(iii) soliciting or contacting TER's donors, funding partners, staff, or volunteers concerning TER or The Exodus Road Brasil;

(iv) prosecuting the INPI Applications, or applying to register any name or mark containing "Exodus," the TER Logo, or the name of any TER program, in any country;

(v) withdraw the INPI Applications for THE EXODUS ROAD, the TER Logo, and "Lup@ Digital," or assign them to TER, and provide TER's counsel with proof of the withdrawal or assignment; and

(vi) return control of the TER Brasil Accounts, including the Instagram account @theexodusbr and the TikTok account @exodusbr, to TER, by delivering all login credentials and removing any other administrator, and refrain from altering, deleting, or renaming those accounts or their content;

B. An order requiring Meirelles to deliver to TER all Lup@ Digital program materials in her possession, custody, or control;

C. An order under 15 U.S.C. § 1125(d)(1)(C) for the forfeiture, cancellation, or transfer to TER of the domain exodusbr.com;

D. An order requiring Meirelles to identify every person to whom she has sent communications concerning TER or The Exodus Road Brasil since September 28, 2026, and to send those persons a corrective notice in a form approved by the Court;

E. An order under 15 U.S.C. § 1116(a) requiring Meirelles to file a sworn report of her compliance within thirty days, and an order under 15 U.S.C. § 1118 for the delivery and destruction of infringing materials;

F. TER's actual damages, Meirelles's profits, and disgorgement;

G. Enhanced damages under 15 U.S.C. § 1117(a); at TER's election, statutory damages under 15 U.S.C. § 1117(d); treble damages under C.R.S. § 6-1-113; and exemplary damages under C.R.S. § 7-74-104(2);

H. A constructive trust over the property and benefits Meirelles obtained through her wrongful conduct;

I. TER's reasonable attorney fees and costs under 15 U.S.C. § 1117, C.R.S. §§ 6-1-113, 7-74-105, and other applicable law;

J. Pre- and post-judgment interest; and

K. Such other relief as the Court deems just.

Dated: November 20, 2026.

Respectfully submitted,

**COVENANT LAW PLLC**

*s/ Ian Speir*
Ian Speir, Colo. Reg. No. 45777
13395 Voyager Pkwy. #130-732
Colorado Springs, CO 80921
Telephone: (719) 464-7357
Email: ian@covtlaw.com

*Attorney for Plaintiff The Exodus Road, Inc.*

Plaintiff's Address:
The Exodus Road, Inc.
P.O. Box 64063
Colorado Springs, CO 80962

**VERIFICATION**

I, Laura Parker, am the Chief Executive Officer of The Exodus Road, Inc. I have read the foregoing Verified Complaint. The factual allegations concerning The Exodus Road, Inc. and its own acts are true based on my personal knowledge or on records of The Exodus Road, Inc. kept in the ordinary course of business, and the remaining factual allegations are true to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 20, 2026, in Colorado Springs, Colorado.

______________________________
Laura Parker
Chief Executive Officer
The Exodus Road, Inc.

# Audit trail

## Details

| | |
|---|---|
| FILE NAME | Verification Page - 11/20/26, 9:49 AM.pdf |
| STATUS | Signed |
| STATUS TIMESTAMP | 2026/11/20 16:50:35 UTC |

## Activity

| | | |
|---|---|---|
| SENT | laura@theexodusroad.com **sent** a signature request to:<br>• Laura Parker (laura@theexodusroad.com) | 2026/11/20 16:49:19 UTC |
| SIGNED | **Signed** by Laura Parker (laura@theexodusroad.com) | 2026/11/20 16:50:35 UTC |
| COMPLETED | This document has been signed by all signers and is **complete** | 2026/11/20 16:50:35 UTC |

The email address indicated above for each signer may be associated with a Google account, and may either be the primary email address or secondary email address associated with that account.